**IN STITCHES, INC., Petitioner–Appellee,**

and

**Colorado State Board of Assessment Appeals, Appellee,**

v.

**DENVER COUNTY BOARD OF COUNTY COMMISSIONERS, Respondent–Appellant.**

**No. 01CA1974.**

Colorado Court of Appeals,
Div. V.

Nov. 21, 2002.

Rubin & Zimmerman, P.C., Steven L. Zimmerman, Ronald M. Rubin, Denver, CO, for Petitioner–Appellee.

Ken Salazar, Attorney General, Mark Gerganoff, Assistant Attorney General, Denver, CO, for Appellee.

J. Wallace Wortham, Jr., City Attorney, Eugene J. Kottenstette, Assistant City Attorney, Denver, CO, for Respondent–Appellant.

Opinion by Judge ROTHENBERG.

In this property tax case, respondent, the Denver County Board of County Commissioners (BOCC), appeals from an order of the Board of Assessment Appeals (BAA) in favor of petitioner, In Stitches, Inc. (taxpayer). The BAA ruled that the county assessor had improperly made retroactive assessments of

additional property taxes against taxpayer's personal property for five previous tax years, and it reinstated the assessor's original valuations of that property for those years. We affirm.

At issue in this appeal is whether the statutory authorization for retroactive assessments of additional property taxes against "omitted property" applies to previously taxed property that has been undervalued. We agree with the BAA that it does not and that there was no omitted property in this case.

The record reveals the following. Taxpayer did not file personal property declaration schedules for the 1993 through 1997 tax years. Consequently, the assessor previously made "best information available" (BIA) valuations of taxpayer's personal property for each of those tax years as permitted under § 39–5–116(1), C.R.S.2002. Taxpayer did not protest the annual BIA valuations of approximately $50,000 assigned to the entirety of its taxable personal property, and it paid the taxes for those years.

In 1998, an audit was conducted, and the assessor determined that taxpayer's personal property had a substantially higher valuation than the previous BIA valuation for each of the 1993 through 1997 tax years. Thereafter, the assessor made additional assessments for those tax years for omitted property, based on the increase in the valuation of the personal property. After taxpayer's challenges to the additional assessments were denied by the BOCC, taxpayer appealed the matter to the BAA.

Following a hearing, the BAA ruled that the subject property was not omitted property, but had merely been undervalued, and that the assessor could not later increase the BIA valuations and retroactively assess taxes for the five years on the difference in value. Accordingly, the BAA concluded the original $50,000 BIA valuations for the 1993 through 1997 tax years must stand and ordered the BOCC to grant taxpayer relief from the additional assessments.

The BOCC now contends the BAA erred in so ruling because it failed to abide by the statutory scheme regarding valuation of personal property. We disagree.

Under § 39–5–125(1), C.R.S.2002, upon discovery that "any taxable property has been omitted from the assessment roll," the assessor is required to determine "the value of such omitted property," to notify the treasurer of any unpaid taxes "on such property" for prior years, and to list it on the assessment roll. Hence, § 39–5–125(1) authorizes assessors to make retroactive assessments of taxes for prior years against previously omitted property. *See also* § 39–10–101(2)(a)(I), C.R.S.2002 (providing similar statutory authorization for treasurers to make retroactive assessments against previously omitted property).

However, in *Cabot Petroleum Corp. v. Yuma County Board of Equalization*, 847 P.2d 152, 155 (Colo.App.1992) (*Cabot I*), *rev'd on other grounds*, 856 P.2d 844 (Colo. 1993) (*Cabot II*), a division of this court explained that the foregoing statutory provisions authorize retroactive assessments of property taxes only against "omitted *property*," and not against "omitted *value*." The division distinguished between property that has been omitted from previous taxation and property that has been undervalued and concluded that these statutory provisions did not authorize retroactive assessments against property that was previously undervalued.

Although the supreme court in *Cabot II* held the retroactive assessments of additional property taxes were authorized in that case, it relied on other statutory provisions applicable to the assessment of property taxes on oil or gas leaseholds. *Cabot II* did not disturb the holding in *Cabot I* regarding the construction of §§ 39–5–125(1) and 39–10–101(2)(a)(I).

This distinction between omitted property and previously undervalued property has also been recognized in the reference manuals published by the Property Tax Administrator (PTA). As relevant here, the PTA's reference manuals provide that when property has been valued and taxed in prior years "and it is later discovered that the property has a greater value, the property has been undervalued and the value cannot be increased" retroactively, because under-

**1082**

valuation "does not qualify as omitted property." 2 *Assessors Reference Library* § III, at 3.20 (rev.Dec.2001). The interpretations of statutory provisions by agencies charged with their administration must be given deference. *See Besch v. Jefferson County Bd. of County Comm'rs*, 20 P.3d 1195 (Colo.App. 2000).

 Thus, we agree with the BAA and the division in *Cabot I* that the provisions of §§ 39–5–125(1) and 39–10–101(2)(a)(I) do not authorize retroactive assessments against later increases in the value placed on previously undervalued property, because such valuation increases do not involve omitted property.

We also agree with the BAA that the retroactive assessments in this case were not made against omitted property, but were made against later valuation increases for previously undervalued property. Although taxpayer did not file the required personal property schedules, the entirety of taxpayer's personal property was previously taxed based on the assessor's BIA valuations, although it was undervalued, and we cannot say any property was omitted from the assessment roll.

We note in this regard that assessors have two enforcement methods available to assist them when taxpayers do not file the required personal property schedules. *See* § 39–5–116(1) (authorizing assessors to assess fines for a taxpayer's failure to complete and file a personal property declaration schedule); § 39–5–119, C.R.S.2002 (authorizing assessors to apply for district court order requiring a taxpayer to answer questions about property). The record does not reflect whether the assessor employed either method in this case.

In summary, we conclude the retroactive assessments here were not authorized under the omitted property provisions of §§ 39–5–125(1) and 39–10–101(2)(a)(I). We therefore perceive no error in the BAA's ruling upholding the assessor's original BIA valuations of taxpayer's personal property for the 1993–1997 tax years.

The BOCC's remaining contentions of error are also unpersuasive. Taxpayer's request for an award of attorney fees is denied.

The order of the BAA is affirmed.

Judge MARQUEZ and Judge TAUBMAN concur.