2013 COA 46

**BACHELOR GULCH OPERATING COMPANY, LLC, Petitioner– Appellant,**

v.

**BOARD OF COUNTY COMMISSIONERS OF EAGLE COUNTY, COLORADO, Respondent–Appellee,**

and

**Board of Assessment Appeals, State of Colorado, Appellee.**

**Court of Appeals No. 12CA0571**

Colorado Court of Appeals,
Div. VI.

Announced March 28, 2013

Ryley Carlock & Applewhite, F. Brittin Clayton III, Denver, Colorado, for Petitioner–Appellant

Bryan R. Treu, County Attorney, Christina Hooper, Assistant County Attorney, Eagle, Colorado, for Respondent–Appellee

Opinion by JUDGE GABRIEL.

¶ 1 Bachelor Gulch Operating Company, LLC appeals the order of the Board of Assessment Appeals (BAA) denying its petition for an abatement or refund of taxes for tax year 2007.

¶ 2 As an apparent matter of first impression in Colorado, we conclude that Colorado law does not allow an assessor to conduct a new valuation analysis when a property is subdivided during the course of a particular tax year. Rather, in such circumstances, the procedure articulated by the State Property Tax Administrator (the Administrator) in the *Assessor's Reference Library* (*ARL*) applies. This procedure instructs assessors to apportion the actual value assessed to the original property for that tax year among the parcels newly created by the subdivision.

¶ 3 Because the evidence shows that the Eagle County Assessor (Assessor) complied with this procedure here, we affirm.

## I. Background

¶ 4 Bachelor Gulch owns a substantial portion of the Ritz Carlton Hotel in Eagle County (the hotel). For tax year 2007, the Assessor assigned the hotel an actual value of approximately $47 million. Bachelor Gulch does not contest this valuation on appeal.

¶ 5 As of January 1, 2007, which was the assessment date for tax year 2007, the hotel was a single unit for tax assessment purposes. During that year, however, two new plats were filed. These plats subdivided the original hotel unit, ultimately creating fifty-one separate "child parcels" (i.e., parcels resulting from the subdivision). Fifty of these child parcels were residential condominiums created out of existing hotel rooms. The other child parcel was what remained of the hotel after the subdivision (the hotel child parcel).

¶ 6 Following these subdivisions, the Assessor allocated the approximately $47 million previously assessed to the hotel among the newly created child parcels in proportion to the square footage of each child parcel. As pertinent here, the Assessor allocated approximately $36 million of the original value to the hotel child parcel, and that allocated value provided the basis for that parcel's 2007 taxes.

¶ 7 Thereafter, Bachelor Gulch petitioned the Board of County Commissioners of Eagle County (the Eagle County Board) for an abatement or refund of taxes. Although the Eagle County Board accepted the Assessor's recommendation to correct a clerical error, it rejected Bachelor Gulch's requested valuation of the hotel child parcel.

¶ 8 Bachelor Gulch then appealed to the BAA. After conducting an evidentiary hearing and receiving written closing arguments, the BAA denied Bachelor Gulch's appeal. As pertinent here, the BAA found that the Assessor's allocation method was consistent with both the requirements of state law and the method advocated by the *ARL* and that sufficient probative evidence and testimony supported the Assessor's allocation of approximately $36 million to the hotel child parcel for tax year 2007.

¶ 9 Bachelor Gulch now appeals.

## II. Preservation

¶ 10 As an initial matter, we disagree with the Eagle County Board's assertion that because Bachelor Gulch did not raise its current legal argument during the evidentiary portion of the BAA hearing, it has failed to preserve that argument for appeal.

¶ 11 Legal arguments may be preserved for appeal by raising them during closing argument. *See Target Corp. v. Prestige Maint. USA, Ltd.*, 2013 COA 12, ¶ 23, ——— P.3d ——— (holding that an issue was sufficiently preserved for appeal when it was raised in the defendant's closing argument and when the court addressed it in its oral ruling); *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo.App.2010) ("Because [appellant's] closing argument essentially presented to the trial court the sum and substance of the argument it now makes on appeal, we consider that argument properly preserved for appellate review.").

¶ 12 Here, Bachelor Gulch's closing argument raised the sum and substance of the legal argument that it now asserts on appeal. Moreover, the BAA's order acknowledged this argument and, in denying Bachelor Gulch's petition, necessarily (if implicitly) rejected it. Accordingly, we will consider the merits of Bachelor Gulch's argument.

## III. Standard of Review of BAA Decisions

¶ 13 It is the function of the BAA, not the reviewing court, to weigh the evidence and resolve any conflicts therein. *Jefferson Cnty. Bd. of Cnty. Comm'rs v. S.T. Spano Greenhouses, Inc.*, 155 P.3d 422, 424 (Colo. App.2006). A decision of the BAA, however, may be set aside if it is unsupported by competent evidence or reflects a failure to abide by the statutory scheme for calculating property tax assessments. *Id.*

¶ 14 Although the BAA's findings are entitled to deference, its interpretation of a property tax statute is a question of law that we review de novo. *Id.*

## IV. Discussion

¶ 15 This case requires us to determine the procedure that an assessor must employ with respect to the value of subdivided property when that subdivision occurs during the course of a particular tax year, after the initial valuation and before either the next statutory assessment date or a revaluation due to unusual conditions.

¶ 16 Bachelor Gulch acknowledges that no statute specifically addresses a base year subdivision but asserts that when such a subdivision occurs, the newly created properties should be valued and taxed as omitted properties under section 39–5–125(1), C.R.S. 2012. Thus, it contends that pursuant to article X, section 3(1)(a) of the Colorado Constitution and section 39–1–103(15), C.R.S. 2012, the Assessor was required to determine the actual value of each child parcel, giving appropriate consideration to the market, income, and cost approaches to appraisal. Alternatively, Bachelor Gulch asserts that even if the property at issue is not to be treated as an omitted property under section 39–5–125(1), the Colorado Constitution nonetheless compels consideration of the market, income, and cost approaches to appraisal.

¶ 17 The Eagle County Board responds that once the actual value of a particular property is established, Colorado law prohibits an assessor from revaluing such property

until the next statutory assessment date, subject to exceptions not applicable here. The Eagle County Board thus argues that Bachelor Gulch's proposed methodology improperly seeks a revaluation of property in violation of section 39–1–104(10.2)(d) and (11)(b)(I), C.R.S.2012. The Eagle County Board further asserts that the proper procedure to be employed in the circumstances presented here is that set forth in the *ARL*, and that the Assessor employed that procedure.

¶ 18 We agree with the Eagle County Board.

### A. The Statutory Scheme

¶ 19 Colorado's property tax statutes provide for the biennial appraisal and valuation of real and personal property for property tax purposes. §§ 39–1–103(5)(a), 39–1–104(10.2)(a), C.R.S.2012; *see also Boulder Country Club v. Boulder Cnty. Bd. of Comm'rs*, 97 P.3d 119, 120 (Colo.App.2003) (describing the statutory scheme). Specifically, in odd-numbered years, the assessor determines the actual value of property by "appropriate consideration of the cost approach, the market approach, and the income approach to appraisal." §§ 39–1–103(5)(a), 39–1–104(10.2)(a). Generally, this actual value is carried over to the intervening tax year. *See* § 39–1–104(10.2) (a); *see also Cherry Hills Country Club v. Bd. of Cnty. Comm'rs*, 832 P.2d 1105, 1109 (Colo.App.1992) (observing that, absent certain statutory exceptions, the valuations of a taxpayer's land should be the same for both years in a reassessment cycle).

¶ 20 Section 39–1–104(11)(b)(I), however, allows an assessor to increase or decrease a property's actual value in an intervening year for certain "unusual conditions." These "unusual conditions" are limited to

the installation of an on-site improvement, the ending of the economic life of an improvement with only salvage value remaining, the addition to or remodeling of a structure, a change of use of the land, the creation of a condominium ownership of real property as recognized in the "Condominium Ownership Act," article 33 of title 38, C.R.S., any new regulations restricting or increasing the use of the land, or a combination thereof, the installation and operation of surface equipment relating to oil and gas wells on agricultural land, any detrimental acts of nature, and any damage due to accident, vandalism, fire, or explosion.

§ 39–1–104(11)(b)(I); *see also LaDuke v. CF & I Steel Corp.*, 785 P.2d 605, 609 (Colo. 1990) (noting that the "unusual conditions" exception is restricted to the circumstances enumerated in the statute). When such an unusual condition applies, the assessor is required to revalue the property for the intervening tax year, to reflect the increase or decrease in actual value attributed to the unusual condition. § 39–1–104(11)(b)(I).

¶ 21 Moreover, section 39–5–125, entitled "Omission—correction of errors," provides, as pertinent here:

[W]henever it is discovered that any taxable property has been omitted from the assessment roll of any year or series of years, the assessor shall immediately determine the value of such omitted property and shall list the same on the assessment roll of the year in which the discovery was made and shall notify the treasurer of any unpaid taxes on such property for prior years.

§ 39–5–125(1).

¶ 22 This provision allows assessors to correct errors and clerical omissions in the assessment roll. *See 24, Inc. v. Bd. of Equalization*, 800 P.2d 1366, 1368 (Colo.App. 1990); *see also Haley v. Elliott*, 20 Colo. 379, 382, 38 P. 771, 772 (1894) (noting that the provisions of a predecessor to section 39–5–125 "were purposely framed so that technical objections, without substantial merit, should not interfere with the collection of the public revenue"). Although section 39–5–125(1) authorizes retroactive assessments of taxes for prior years on property that was omitted from the assessment rolls, it does not authorize retroactive assessments on property that was not omitted but that was previously undervalued. *Jet Black, LLC v. Routt Cnty. Bd. of Cnty. Comm'rs*, 165 P.3d 744, 750 (Colo.App.2006); *In Stitches, Inc. v. Denver*

*Cnty. Bd. of Cnty. Comm'rs,* 62 P.3d 1080, 1081 (Colo.App.2002).

## B. Section 39–5–125(1)

¶ 23 Here, Bachelor Gulch contends that section 39–5–125(1) applies and that the Assessor was required to determine the actual value of the hotel child parcel for tax year 2007, giving appropriate consideration to the cost, market, and income approaches to appraisal in accordance with article X, section 3(1)(a) of the Colorado Constitution and section 39–1–103(15). We disagree.

¶ 24 Bachelor Gulch's argument presents a question of statutory interpretation. Our primary goal in statutory interpretation is to find and give effect to legislative intent. *Lujan v. Life Care Centers,* 222 P.3d 970, 973 (Colo.App.2009). We first look to the language of the statute, giving words and phrases their plain and ordinary meanings. *Id.* When a court construes a statute, it should read and consider the statute as a whole and interpret it in a manner giving consistent, harmonious, and sensible effect to all of its parts. *Id.* In doing so, a court should not interpret a statute so as to render any part of it either meaningless or absurd. *Id.*

¶ 25 When a statute does not define its terms but the words used are terms of common usage, we may refer to dictionary definitions to determine the plain and ordinary meaning of those words. *Marks v. Koch,* 284 P.3d 118, 123 (Colo.App.2011). Moreover, a legislatively selected heading of a statute, although not dispositive of legislative intent, can aid in determining such intent. *Jefferson Cnty. Bd. of Equalization v. Gerganoff,* 241 P.3d 932, 936 (Colo.2010); *see also U.M. v. Dist. Court,* 631 P.2d 165, 167 (Colo.1981) (noting that headers added by the revisor of statutes do not allow an implication or presumption of legislative construction but that a court can use a legislatively selected header as an aid in construing a statute).

¶ 26 Finally, in this case, we must strictly construe the provisions at issue. § 39–1–101, C.R.S.2012 ("[T]he provisions of said articles [i.e., articles 1 to 13 of title 39] shall be strictly construed."); *accord Gerganoff,* 241

P.3d at 935. If the statute is unambiguous, we look no further. *Lujan,* 222 P.3d at 973.

¶ 27 As noted above, section 39–5–125(1) unambiguously allows an assessor to conduct a valuation only when "it is discovered that [the] taxable property has been *omitted* from the assessment roll of any year or series of years." (Emphasis added.) As pertinent here, to be "omitted" means to have been left out or left unmentioned. *Webster's Third New International Dictionary* 1574 (2002); *Black's Law Dictionary* 1197 (9th ed. 2009). This definition suggests that the omitted property could have been included in the first place. *Cf.* Mich. Comp. Laws. Ann. § 211.34d(1)(b)(i) (West 2013) (defining "omitted real property" as "previously existing tangible real property not included in the assessment").

¶ 28 Moreover, the heading of section 39–5–125, "Omission—correction of errors," which was legislatively selected, *see* Ch. 94, sec. 1, § 137–5–25, 1964 Colo. Sess. Laws 705, suggests that the section provides a remedial mechanism to value property that was not, but should have been, included in a particular tax year's assessment. *See Gerganoff,* 241 P.3d at 936; *see also 24, Inc.,* 800 P.2d at 1368 (holding that when the record was devoid of any evidence that a clerical error occurred, the statutory language and applicable case law made it "abundantly clear" that section 39–5–125 could not be used to justify an increase in value of the taxpayer's property).

¶ 29 Here, one could argue either that the hotel child parcel at issue existed on the assessment date of January 1, 2007 (but only as part of the parent parcel) or that it did not then exist because, as a legal matter, it was not created until the pertinent subdivisions of the parent parcel were complete. Either way, however, the hotel child parcel cannot be deemed to have been "omitted" within the meaning of section 39–5–125(1). If it is deemed to have existed as of the assessment date, albeit only as part of the parent parcel, then it was appraised as part of that parent parcel and was not "omitted." If it is deemed not to have existed as of the assessment date, then it was not "omitted" because it was not a property that existed but was

not captured on the assessment rolls. Nor was it a property the non-inclusion of which was an error that needed to be corrected. *See Jet Black,* 165 P.3d at 750 (explaining, with respect to property that existed but was nonetheless not captured on the assessment rolls, that section 39–5–125(1) authorizes retroactive assessments of taxes for prior years on previously omitted property, but not on property that was assessed but undervalued); *In Stitches,* 62 P.3d at 1081–82 (same); *Cabot Petroleum Corp. v. Yuma Cnty Bd. of Equalization,* 847 P.2d 152, 155 (Colo.App.1992) (same), *rev'd on other grounds,* 856 P.2d 844 (Colo.1993); *Chew v. Bd. of Assessment Appeals,* 673 P.2d 1028, 1029 (Colo.App.1983) (affirming the retroactive assessment of taxes as to improvements erected on a property after the property's initial appraisal, where the improvements had previously been omitted from the assessment rolls).

¶ 30 For these reasons, we conclude that section 39–5–125(1) does not apply in the circumstances presented here.

### C. ARL

¶ 31 In light of the foregoing, no Colorado statute appears to govern the factual scenario presented here, namely, when a property is subdivided after the initial valuation but before either the next statutory assessment date or a revaluation due to unusual conditions. When a property tax statute does not provide specific guidance on a particular issue, we will consider the Administrator's interpretation of the appropriate provisions. *S.T. Spano,* 155 P.3d at 425. The Administrator's interpretations of property tax statutes are embodied in the *ARL. Id.* Although not binding on courts, judicial deference to these interpretations is appropriate when the statute at issue is subject to different reasonable interpretations and the matter comes within the administrative agency's special expertise. *Huddleston v. Grand Cnty. Bd. of Equalization,* 913 P.2d 15, 17 (Colo.1996). County assessors, however, are bound by such interpretations. *Id.*

¶ 32 Here, the *ARL* sets forth an administrative procedure for county assessors to follow when processing property subdivisions of the type that occurred in this case. Specifically, the *ARL* provides that although subdivision and condominium plats can be processed at any time during the year, "the *original parcel value and classification* must remain the same as assigned to the property on the January 1 assessment date." 2 *ARL* ch. III, at 3.34 (rev. Oct. 2011) (emphasis in original); *see also id.* at 3.35–3.36 ("Total parcel values are set as of the property status on the assessment date and cannot be increased or decreased for the year the plat is filed based solely on the plat being filed, after the value has been set by the assessor."). The *ARL* further provides that if a project is "broken out" (i.e., subdivided) after the notice of valuation deadline, then the current actual value as of the assessment date is apportioned to the lots or units in the project. *Id.* at 3.36. This apportionment can be based on acreage, buildable units, site, or the percentage a unit has in the general common elements. *Id.*

¶ 33 Contrary to Bachelor Gulch's assertion, we perceive no inconsistency between the *ARL*'s guidance, on the one hand, and article X, section 3(1)(a) of the Colorado Constitution and section 39–1–103(15), on the other hand.

¶ 34 Article X, section 3(1)(a) of the constitution provides, in pertinent part, that valuations shall be determined under general laws

which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessments of all real and personal property not exempt from taxation under this article. Valuations for assessment shall be based on appraisals by assessing officers to determine the actual value of property in accordance with provisions of law, which laws shall provide that actual value be determined by appropriate consideration of cost approach, market approach, and income approach to appraisal.

¶ 35 Pursuant to these constitutional requirements, the General Assembly has enacted the above-described statutory scheme, under which all real and personal property is appraised and valued for property tax purposes by the county assessor using a reassessment cycle consisting of two full calendar years. *See Boulder Country Club,* 97 P.3d at

120. This scheme further provides that when property is appraised pursuant to the statutory requirements, the actual value shall be determined by appropriate consideration of the cost approach, the market approach, and the income approach to appraisal. § 39–1–103(5)(a), (15).

¶ 36 Here, the hotel child parcel at issue was not being valued for assessment pursuant to the foregoing statutory requirements. The parcel was not subject to a biennial or unusual condition reassessment at the time at issue, nor are we aware of any applicable statutory provision allowing for the immediate revaluation of that parcel. Accordingly, the constitutional and statutory provisions calling for consideration of the income, market, and cost approaches to appraisals *when property is being valued for assessment* are inapplicable here.

¶ 37 Because (1) we perceive no inconsistency between the *ARL* 's guidance and the constitutional and statutory scheme for property valuation, (2) the statutory scheme is subject to different reasonable interpretations, and (3) the issue presented here falls within the administrative agency's special expertise, we conclude that the above-described *ARL* procedures are entitled to deference and are persuasive in our analysis of this case. *See Huddleston,* 913 P.2d at 17; *see also El Paso Cnty. Bd. of Equalization v. Craddock,* 850 P.2d 702, 705 (Colo.1993) (concluding that the Administrator's interpretation was "persuasive" where the matter at issue called for the exercise of technical expertise that the agency possessed and the statutory language was susceptible of more than one reasonable interpretation).

### D. Application

 ¶ 38 Having thus concluded that the *ARL* governs here, the question becomes whether the BAA correctly found that the Assessor complied with the *ARL.* We conclude that the BAA correctly so found.

¶ 39 The Eagle County Board presented substantial and competent evidence that the methodology employed by the Assessor was consistent with the *ARL.* To the extent that Bachelor Gulch presented contrary evidence, it was the BAA's role to weigh that evidence

and to resolve any conflicts therein. *See S.T. Spano,* 155 P.3d at 424. In these circumstances, we will not disturb the BAA's findings. *Cf. id.* (noting that a BAA decision may be set aside if, among other things, it is unsupported by competent evidence).

### V. Conclusion

¶ 40 For these reasons, the BAA's order is affirmed.

JUDGE LOEB and JUDGE DUNN concur.