2013 COA 90

MARSICO CAPITAL MANAGEMENT, LLC, Petitioner–Appellant,

v.

DENVER BOARD OF COUNTY COMMISSIONERS, Respondent–Appellee,

and

Board of Assessment Appeals, Appellee.

No. 12CA1266

Colorado Court of Appeals, Div. I.

Announced June 6, 2013

Bryan Cave HRO, Charles A. Ramunno, Paul J. Lopach, Denver, Colorado, for Petitioner–Appellant

Douglas J. Friednash, City Attorney, Charles T. Solomon, Assistant City Attorney, Denver, Colorado, for Respondent–Appellee

Opinion by JUDGE ROMÁN

¶ 1 Marsico Capital Management, LLC (MCM), challenges the Board of Assessment Appeals' (BAA) order upholding the Denver Board of Equalization's (BOE) order denying its petitions challenging special notices of value (SNOVs) for the 2008 and 2009 tax years resulting from an audit of its personal property by the City and County of Denver Assessor's Office (City Assessor). We affirm.

## I. Background

¶ 2 MCM is an investment advisory firm that leases office space in a downtown Denver commercial building. In 2004 and 2005 MCM expanded and remodeled its leased office space and made tenant improvements. Following MCM's filing of its first personal property declaration schedule in February 2006 for the 2005 tax year, the City Assessor issued an SNOV, assessing the value of MCM's personal property.

¶ 3 In 2009 and 2010, the City Assessor audited MCM for tax years 2005 through 2009. The audit revealed that although MCM had timely reported its tenant improvements annually in its personal property declaration schedules, its tenant improvements were not valued or assessed personal property taxes for tax years 2005 through 2009 because the City Assessor's computer system had not included them. As a result, the City Assessor valued the tenant improvements and added these values to each of the five tax year assessment rolls. The City Assessor then notified MCM of the value assigned to the tenant improvements through five SNOVs.

¶ 4 MCM filed protests with the City Assessor challenging all five SNOVs. The City Assessor granted the protests for tax years 2005 through 2007, because the statute of limitations had run, but denied the protests for tax years 2008 and 2009. The City Assessor also notified the City Treasurer of the amount of unpaid taxes for the tenant improvements for tax years 2008 and 2009. On May 10, 2010, the Treasurer billed MCM for those unpaid taxes.

¶ 5 MCM challenged the 2008 and 2009 SNOVs before the BOE. The BOE reduced the overall value on the two SNOVs but denied the petitions. MCM appealed the BOE's decision to the BAA. The BAA denied MCM's appeal.

¶ 6 This appeal followed.

## II. Standard of Review

¶ 7 It is the function of the BAA, not the reviewing court, to weigh the evidence and resolve any conflicts therein. See *Bachelor Gulch Operating Co. v. Bd. of County Comm'rs*, 2013 COA 46, ¶ 13, 316 P.3d 43, 2013 WL 1245329; *Jefferson Cnty. Bd. of Cnty. Comm'rs v. S.T. Spano Greenhouses, Inc.*, 155 P.3d 422, 424 (Colo.App. 2006). A decision of the BAA, however, may be set aside if it is unsupported by competent evidence or reflects a failure to abide by the statutory scheme for calculating property tax assessments. *S.T. Spano*, 155 P.3d at 424.

¶ 8 Although the BAA's findings are entitled to deference, its interpretation of a property tax statute is a question of law that we review de novo. *Id.*

¶ 9 When interpreting a statute, "[o]ur primary objective is to effectuate the intent of the General Assembly by looking to the plain meaning of the language used, considered within the context of the statute as a whole." *Bly v. Story*, 241 P.3d 529, 533 (Colo.2010) (citing *Romanoff v. State Comm'n on Judicial Performance*, 126 P.3d 182, 188 (Colo. 2006)).

## III. "Omitted Property" or "Omitted Value"

¶ 10 The central issue in this case is whether tenant improvements, later discovered by a taxing authority, constitute "omitted

property" or "omitted value." If tenant improvements constitute "omitted property," then they are subject to retroactive revaluation. But if tenant improvements constitute "omitted value," then additional taxes may not be imposed.

¶ 11 Tenant improvements are "personal property" under section 39–1–102(1 1), C.R.S. 2012, and are subject to personal property tax imposed by title 39 of the Colorado Revised Statutes. However, the statutory scheme prevents taxing authorities from imposing additional taxes based on revaluations of property that has already been valued and taxed. *See Jet Black, LLC v. Routt County Bd. of County Comm'rs*, 165 P.3d 744, 750 (Colo.App.2006); *In Stitches, Inc. v. Denver County Bd.. of Comm'rs*, 62 P.3d 1080, 1081 (Colo.App.2002).

¶ 12 Here, the parties disagree on whether personal property taxes were previously assessed on the tenant improvements.

¶ 13 MCM claims that by retroactively adding the 2004 and 2005 tenant improvements to the assessment rolls for the 2008 and 2009 tax years, the City Assessor included an omitted value of previously taxed property that, once taxed, could not be reassessed. According to MCM, the tenant improvements from 2004 and 2005 are a subclass of affixed property and because the affixed property class had already been taxed, retroactive revaluation of the entire class amounts to retroactively assessing an "omitted value," which is prohibited.

¶ 14 The BAA and the City Assessor contend that the tenant improvements were never included in the computer system due to an error by the City Assessor, and thus were not included in the assessment rolls for tax years 2005 through 2009. According to the BAA and the City Assessor, personal property taxes were therefore never assessed on the tenant improvements and thus those improvements could be retroactively assessed because they are "omitted property."

¶ 15 We agree with the Board and the City Assessor.

## A. Section 39–5–125(1)

¶ 16 Section 39–5–125(1), C.R.S.2012, allows the assessor to add omitted property to the tax rolls "whenever it is discovered that any taxable property has been omitted from the assessment roll of any year or series of years." Colorado courts have interpreted this statute as authorizing retroactive assessments of taxes for prior years on previously omitted property. *See In Stitches*, 62 P.3d at 1081; *Cabot Petroleum Corp. v. Yuma County Bd. of Equalization*, 847 P.2d 152, 155 (Colo.App.1992), *rev'd on other grounds*, 856 P.2d 844 (Colo.1993); *see also Chew v. Bd. of Assessment Appeals*, 673 P.2d 1028, 1029 (Colo.App.1983) (concluding that § 39–5–125(1) is unambiguous).

¶ 17 We conclude that the tenant improvements at issue were previously omitted from the assessment roll and therefore constitute omitted property because they are distinct additions being taxed for the first time.

## B. Tenant Improvements

¶ 18 In *Chew*, 673 P.2d at 1029, another division of this court affirmed a retroactive assessment of taxes on property improvements, after the property's initial appraisal, because the improvements had previously been omitted from the assessment rolls.

¶ 19 Courts in other jurisdictions have agreed with this result. When, as in this case, all improvements at issue on the property are omitted, other jurisdictions allow retroactive taxation. *See Municipality of Anchorage v. Alaska Distribs. Co.*, 725 P.2d 692, 694 (Alaska 1986); *Korash v. Mills*, 263 So.2d 579, 580–81 (Fla.1972); *Mueller v. Mercer County*, 60 N.W.2d 678, 685 (N.D. 1953). These courts conclude that the assessor is not attempting to correct an error in judgment resulting in undervaluation, but, rather, is assessing for the first time property which escaped assessment entirely. *Korash*, 263 So.2d at 581.

¶ 20 We recognize that some jurisdictions preclude later assessment, reasoning that the property as a unit consisting of the land and improvements has already been taxed. *See In re Westward Look Development Corp.*, 138 Ariz. 88, 673 P.2d 26, 27–28 (Ariz.Ct.App.

1983); *Leyh v. Glass,* 508 P.2d 259, 262–63 (Okla.1973). The omission of the improvements at issue, according to these jurisdictions, constitutes an undervaluation of the entire property, which cannot be reassessed. *Westward Look,* 673 P.2d at 28; *Leyh,* 508 P.2d at 263.

¶ 21 We find persuasive, however, the reasoning of courts in those jurisdictions which have concluded that when all improvements at issue on the property are omitted, the assessor is assessing for the first time property which escaped assessment entirely. Our conclusion is in line with the statutory scheme which allows the City Assessor to remedy mistakes and revalue previously omitted property, even when the omission was the City Assessor's own error and not the fault of the taxpayer. §§ 39–5–125, 39–10–101, C.R.S. 2012.

¶ 22 MCM asserts that in *Northcutt v. Burton,* the Colorado Supreme Court held that whether property is included in, or omitted from, the assessment roll turns on whether an assessor has sufficient information to allow a determination of the property's value, not whether a single specific list of property valuations has been assembled. *Northcutt v. Burton,* 127 Colo. 145, 149, 254 P.2d 1013, 1016 (1953), *overruled on other grounds by Bd. of Assessment Appeals v. Benbrook,* 735 P.2d 860, 868 (Colo.1987). According to MCM, *Northcutt* controls, and because MCM provided complete declarations to the City Assessor, the Assessor had sufficient information to make an accurate valuation and therefore the tenant improvements at issue were necessarily included in the assessment roll.

¶ 23 We disagree with MCM that *Northcutt* controls. Section 39–5–124(1), C.R.S. 2012, expressly contemplates that property can be omitted from the assessment roll, even though the assessment roll was used in the Assessor's valuation; therefore, the fact that improvements were not included in the assessment roll does not prevent retroactive assessments of taxes for prior years. *Northcutt,* 127 Colo. at 149, 254 P.2d at 1016.

¶ 24 Moreover, we reject MCM's contention that *In Stitches* stands for the proposition that once a "class" or "subclass" of property has been valued, all of the property that could potentially fit within that "class" or "subclass" has been valued and, as a result, there can be no omitted property in that "class" or "subclass" of property. MCM's argument is inconsistent with the plain language of sections 39–5–125(1) and 39–10–101(2)(a)(I), C.R.S.2012, and the *In Stitches* decision.

¶ 25 The statutory scheme in sections 39–5–125(1) and 39–10–101(2)(a)(I) authorizes assessors and treasurers to correct omissions in the assessment roll when it is discovered that "taxable property" has been omitted. Importantly, neither statute contains the terms "class" or "subclass" of property, and we decline to judicially rewrite these statutes by adding this language. *See Common Sense Alliance v. Davidson,* 995 P.2d 748, 753 (Colo.2000); *see also Boulder County Bd. of Commis. v. HealthSouth Corp.,* 246 P.3d 948, 951 (Colo.2011) ("[w]e do not add words to a statute").

¶ 26 The *In Stitches* decision was based upon the plain reading of sections 39–5–125(1) and 39–10–101(2)(a)(I), as well, and the terms "class" or "subclass" are not used in that decision.

### C. Assessor's Reference Library

¶ 27 In addition, the Assessor's Reference Library (ARL), promulgated by the State Property Tax Administrator pursuant to section 39–2–109(1)(e), C.R.S.2012, and binding on county assessors, supports the Board's and City's position. *See Jet Black,* 165 P.3d at 749. The ARL provides that "[w]henever it is discovered that any taxable property has been omitted from the assessment roll, ... the assessor shall ... [d]etermine the number of years the property was omitted." § 39–10–101(2)(b)(II), C.R.S.2012. Accordingly, if the error or omission was the fault of a governmental entity, omitted property is valued up to two prior years; if the omission is not the fault of a governmental entity, the property is valued up to six prior years; and if fraud was committed with the intent to evade taxation, there is no time limit on the retroactive collection of taxes. § 39–10–

101(2)(b)(I) – (II), (2)(c), C.R.S.2012. 2 *ARL* ch. III, at 3.23, 3.25 (rev. Apr. 2013).

¶ 28 Therefore, we agree with the BAA's finding that the Assessor and the Treasurer retroactively assessed taxes on omitted property rather than omitted value and acted in accord with the statutory scheme, controlling Colorado cases, and the ARL.

## IV. Assessor's Authority to Revalue Previously Omitted Property

■ ¶ 29 Next, MCM contends that the BAA erred as a matter of law by permitting the City Assessor to take actions that may only be taken by the City Treasurer. We reject this argument as well.

¶ 30 A plain reading of the statutes provides that both the City Assessor and the City Treasurer are authorized to correct omissions in the assessment roll at any time. Section 39–5–125(1) addresses the ability of the *assessor* to add omitted property to the tax rolls:

> [W]henever it is discovered that any taxable property has been omitted from the assessment roll of any year or series of years, *the assessor* shall immediately determine the value of such omitted property and shall list the same on the assessment roll of the year in which the discovery was made and shall notify the treasurer of any unpaid taxes on such property for prior years.

§ 39–5–125(1) (emphasis added).

¶ 31 Section 39–10–101(2)(a)(I) provides similar authority for the *treasurer* to retroactively assess omitted property:

> If, after the tax list and warrant has been received by the treasurer, the treasurer discovers that any taxable property then located in the treasurer's county has been omitted from the tax list and warrant for the current year or for any prior year and has not been valued for assessment, *the treasurer* shall forthwith list and value such property for assessment in the same manner as the assessor might have done and shall enter such valuation for assessment on the tax list and warrant and extend the levy. Such entry shall be designated as an additional assessment and

shall be valid for all purposes, the same as though performed by the assessor.

§ 39–10–101(2)(a)(I) (emphasis added).

¶ 32 Accordingly, the Assessor and the Treasurer are both authorized to correct omissions in the assessment roll and are not confined to temporal restrictions.

## V. BAA's Erroneous Factual Findings

■ ¶ 33 Finally, we reject MCM's contention that the BAA's final order must be vacated because it relies on clearly erroneous factual findings. Although the BAA misstates certain facts, the errors were harmless.

¶ 34 Most notably, the BAA order mistakenly refers to tenant improvements from 1997, 1998, and 2000, although the property at issue comprised only the 2004 and 2005 tenant improvements.

¶ 35 The BAA found, however, that certain of MCM's affixed property was omitted from the assessment rolls for tax years 2008 and 2009 and that when the City Assessor revalued this previously omitted property and notified the City Treasurer of the revaluation, it was acting in accordance with section 39–5–125(1).

¶ 36 After carefully reviewing the record, we conclude that the BAA's mention of the 1997, 1998, and 2000 tenant improvements did not affect the BAA's ultimate decision that in 2008 and 2009 some form of personal property—tenant improvements—was omitted from the assessment rolls and that the City Assessor's actions were proper.

¶ 37 The BAA's mistake is harmless when the record is considered as a whole. *See CTS Investments, LLC v. Garfield County Bd. of Equalization*, 2013 COA 30, ¶ 63, 342 P.3d 451, 2013 WL 979357 (because the BAA's decision is supported by competent evidence in the record, we will not disturb it on appeal); *EchoStar Satellite, L.L.C. v. Arapahoe Cnty. Bd. of Equalization*, 171 P.3d 633, 637 (Colo.App.2007) (BAA's exclusion of document offered by county board of equalization was harmless error because, in

view of testimony permitted on matter, board was not prejudiced by its exclusion).

¶ 38 The BAA's order is affirmed.

JUDGE TAUBMAN and JUDGE FOX concur.