**CABOT PETROLEUM CORPORATION, Petitioner–Appellant and Cross–Appellee,**

v.

**YUMA COUNTY BOARD OF EQUALIZATION, Respondent–Appellee and Cross–Appellant,**

**and**

**Board of Assessment Appeals of the State of Colorado, Appellee.**

No. 91CA0671.

Colorado Court of Appeals, Div. V.

June 4, 1992.

Rehearing Denied Aug. 27, 1992.

Certiorari Granted Feb. 22, 1993.

Gorsuch, Kirgis, Campbell, Walker & Grover, Robert J. Kapelke, Bernard L. Zuroff, Denver, for petitioner-appellant and cross-appellee.

Francis A. Benedetti, County Atty., Wray, for respondent-appellee and cross-appellant.

No appearance for appellee.

Opinion by Judge NEY.

Petitioner, Cabot Petroleum Corporation (taxpayer), appeals from an order of the Board of Assessment Appeals (BAA) which upheld the retroactive assessment of additional property taxes against taxpayer's oil and gas leasehold interests for the 1986, 1987, and 1988 tax years ordered by respondent, the Yuma County Board of Equalization (BOE). The BOE cross-appeals from the BAA's reduction in the amount of additional property taxes the BOE retroactively assessed. We conclude that the retroactive property tax assessments at issue here cannot stand, and therefore, we reverse the BAA's order.

The valuation of oil and gas leasehold interests for property tax purposes is governed by the provisions of § 39–7–101, et seq., C.R.S. (1982 Repl.Vol. 16B), and other relevant statutes including § 39–1–103(2), C.R.S. (1982 Repl.Vol. 16B); §§ 39–1–103(5)(a) & 39–1–104(12)(b), C.R.S. (1991 Cum.Supp.).

Pursuant to § 39–7–101(1)(c) & (d), C.R.S. (1982 Repl.Vol. 16B), the operator of any producing oil or gas leasehold is required to file an annual statement with the county assessor showing the quantity and the "selling price at the wellhead" of all oil or gas sold or transported from the premises during the calendar year immediately preceding the property tax year. Based on these annual statements, the assessor is generally required to value such oil and gas leasehold interests for assessment, as real property, for each property tax year at an amount equal to 87.5 percent of the selling price of the oil or gas sold therefrom during the preceding calendar year. Section 39–7–102(1)(a), C.R.S. (1982 Repl. Vol. 16B). Thus, under the applicable statutory scheme, property taxes are annually assessed against producing oil and gas leasehold interests based on the value of the preceding year's production.

The facts relevant to the retroactive assessments at issue are not in dispute and are set forth in a stipulation between taxpayer and the BOE presented in the proceedings before the BAA. For each of the 1986, 1987, and 1988 property tax years,

taxpayer filed the required annual statements in connection with its oil and gas leasehold interests and timely paid the property taxes that were then assessed based on the value of the preceding year's gas production that taxpayer reported in the annual statements. In the annual statements, taxpayer reported the selling price which it had actually received at that time from the purchaser of the gas produced from its interests during the years in question.

However, taxpayer also filed a lawsuit in federal court against the purchaser of the gas, contending that it was entitled to a substantially higher price for the gas produced and sold during these years under its gas sales contract. Several years later, the federal litigation was settled, and in 1989, as part of the settlement, taxpayer was paid an additional $4,700,000 by the purchaser which was attributable to the alleged underpayment by the purchaser for the gas previously produced and sold in 1985, 1986, and 1987 (which would relate to the 1986, 1987, and 1988 property tax years).

Shortly thereafter, based on the $4,700,000 litigation settlement, the assessor sent taxpayer three tax notices, retroactively assessing additional property taxes against taxpayer's oil and gas leasehold interests for the 1986, 1987, and 1988 tax years, in the total amount of $315,511. The additional property tax assessments were based on the additional proceeds taxpayer had subsequently received in the litigation settlement for the previous years' gas production, which had not and could not have been reported in the annual statements previously filed by taxpayer. After the BOE denied taxpayer's protests to the retroactive assessments made by the assessor, taxpayer appealed the matter to the BAA.

In a series of rulings, the BAA upheld the assessor's authority to make the retroactive assessments of additional property taxes here. However, the BAA reduced the total amount of additional taxes to $200,967, based on adjustments to the $4,700,000 settlement amount to allow for taxpayer's litigation costs and for the loss in value attributable to taxpayer's receipt of the proceeds in 1989 rather than in 1985, 1986, and 1987. Taxpayer's appeal and the BOE's cross-appeal to this court followed.

Taxpayer contends that the retroactive property tax assessments are unlawful because there was no statutory authority for the assessor to make such assessments under the circumstances here. We agree.

The BAA upheld the assessor's authority to make the retroactive property tax assessments in this case based on the "omitted property" statute, § 39–5–125, C.R.S. (1982 Repl.Vol. 16B). Section 39–5–125 provides that:

(1) Whenever it is discovered that any *taxable property* has been *omitted* from the assessment roll of any year or series of years, the assessor shall immediately determine the value of such *omitted property* and shall list the same on the assessment roll of the year in which the discovery was made and shall notify the treasurer of any unpaid taxes on such property for prior years.

(2) *Omissions and errors* in the assessment roll, when it can be ascertained therefrom what was intended, may be supplied or corrected by the assessor at any time before the tax warrant is delivered to the treasurer or by the treasurer at any time after the tax warrant has come into his hands. (emphasis added)

*See also* § 39–10–101(2)(a), C.R.S. (1982 Repl.Vol. 16B) (similarly providing the treasurer with statutory authority to make retroactive assessments of additional property taxes upon discovery that *taxable property* has been *omitted*).

We agree with taxpayer that, here, there has been no "omitted property" within the meaning of § 39–5–125. Contrary to the BAA's analysis and the argument of the BOE, the settlement proceeds received by taxpayer in 1989 do not constitute "omitted property" for property tax purposes, even though such proceeds were received in payment for the additional amount that was agreed was due for the gas previously produced and sold from taxpayer's oil and gas leasehold interests.

Unlike other types of taxes, property taxes are not assessed against the oil or gas produced or the proceeds realized from their sale; rather, under the applicable statutory scheme, property taxes are assessed solely against the oil and gas leaseholds themselves, and the value of the production from such leaseholds is relevant, for property tax purposes, only in determining the value to be given to the oil and gas leaseholds themselves. *See* § 39–7–102; *Federal Land Bank v. Board of County Commissioners*, 788 F.2d 1440 (10th Cir.1986).

Moreover, it is undisputed here that taxpayer reported all of its oil and gas leasehold interests in its annual statements for each of the 1986, 1987, and 1988 property tax years and that it timely paid the property taxes that were then assessed against all of its oil and gas leasehold interests based on the value of the production that was reported at that time.

Thus, we conclude that no "taxable property" of taxpayer has ever been omitted from the assessment of property taxes for the 1986, 1987, and 1988 property tax years. We hold that §§ 39–5–125 and 39–10–101(2)(a) authorize retroactive assessments of additional property taxes only against "omitted *property*" and not against "omitted *value*."

We note that other jurisdictions have also recognized the distinction between "omitted property" and "omitted value" under similar statutory schemes and have similarly held that retroactive assessments of additional property taxes were not authorized by such statutes against property that was previously *undervalued* rather than *omitted*. *See County Board of Equalization v. Nupetco Associates*, 779 P.2d 1138 (Utah 1989) ("escaped assessment" statute); *Chicago Gravel Co. v. Rosewell*, 103 Ill.2d 433, 83 Ill.Dec. 164, 469 N.E.2d 1098 (1984) ("omitted property" statute); *Tacoma Goodwill Industries Rehabilitation Center, Inc. v. County of Pierce*, 10 Wash.App. 197, 518 P.2d 196 (1973) ("omitted property" statute).

We also find the reliance of the BOE and the BAA on *Chew v. Board of Assessment Appeals*, 673 P.2d 1028 (Colo.App.1983) in support of a contrary result to be misplaced. In *Chew*, this court held that § 39–5–125 authorized the retroactive assessment of property taxes against *improvements* that had previously been omitted from the assessment of such taxes, even though property taxes had previously been assessed and paid on the taxpayer's *land.* However, we note that improvements are required to be appraised and valued separately from land for property tax purposes, *see* § 39–5–105(1), C.R.S. (1982 Repl.Vol. 16B), and separate and distinct taxable property had been omitted from the assessment of property taxes in that case.

In contrast, here, no separate taxable property has ever been omitted, but instead, all taxable property has only been undervalued. Thus, *Chew* is factually distinguishable and inapposite here.

In addition, although § 39–5–125(2) also authorizes retroactive property tax assessments that are based on the correction of *clerical errors*, the retroactive assessments at issue here were not based on any such "clerical errors," and the record is devoid of any evidence that a "clerical error" occurred. *See 24, Inc. v. Board of Equalization*, 800 P.2d 1366 (Colo.App. 1990). Thus, contrary to the BAA's analysis, § 39–5–125 is inapplicable and provides no authorization for the retroactive assessments in this case.

We also reject the BOE's argument that the retroactive assessments here were justified pursuant to §§ 39–7–104 and 39–7–105, C.R.S. (1982 Repl.Vol. 16B). Under these provisions, *if* any material part of a taxpayer's annual statements are found to be "willfully false and misleading," then assessors have the statutory authority to make retroactive assessments of additional property taxes against producing oil and gas leasehold interests based on the "best information available" to them. *See also* § 39–10–101(2)(c), C.R.S. (1982 Repl.Vol. 16B) (similarly providing the treasurer with statutory authority to make retroactive assessments of additional property taxes in the case of a taxpayer's "fraudulent action with intent to evade tax").

However, the BAA did not uphold the assessor's authority to make the retroactive assessments here based on such statutory provisions, and nothing in the record would warrant a finding that taxpayer filed willfully false and misleading annual statements or otherwise acted fraudulently with intent to evade tax in connection with the previous assessments of property taxes against its oil and gas leasehold interests for the tax years in question. Thus, §§ 39–7–104, 39–7–105, and 39–10–101(2)(c) are also inapplicable and provide no authorization for the retroactive assessments in this case.

We realize that this holding results in a substantial windfall to taxpayer in that it undoubtedly would have had to pay property taxes based on the full value of the proceeds it received for its gas production had all of such proceeds been timely received and reported in the tax years in question without the necessity of the federal litigation against the gas purchaser.

Nevertheless, we must construe and apply the statutory language authorizing retroactive property tax assessments as it is written, and we cannot, without engaging in impermissible "judicial legislation" under the guise of statutory construction, presently find any statutory authorization for the retroactive assessments at issue here. *See County Board of Equalization v. Nupetco Associates, supra* (windfall immaterial because remedy for statutory loophole is for legislature to create, not courts); *see also Skidmore v. O'Rourke,* 152 Colo. 470, 383 P.2d 473 (1963) (General Assembly has exclusive power to determine the extent of authority of county officials to assess and collect property taxes).

We also note that, by restricting the authority to make retroactive property tax assessments to certain limited circumstances, the current statutory scheme has the positive result of recognizing some degree of finality in the assessment of property taxes against specific properties. *See Chicago Gravel Co. v. Rosewell, supra;*

*Tacoma Goodwill Industries Rehabilitation Center, Inc. v. County of Pierce, supra.*

In light of this disposition of taxpayer's appeal, we do not reach the issues raised by the BOE's cross-appeal.

Accordingly, the order of the BAA is reversed, and the cause is remanded to the BAA with directions to abate the retroactive property tax assessments against taxpayer in their entirety.

RULAND and ENOCH*, JJ., concur.