2015 COA 72

**KINDER MORGAN CO2 COMPANY, L.P., Petitioner–Appellant,**

v.

**MONTEZUMA COUNTY BOARD OF COMMISSIONERS, Respondent–Appellee,**

and

**Colorado Property Tax Administrator, Intervenor,**

**Board of Assessment Appeals, Appellee.**

**Court of Appeals No. 13CA2187**

Colorado Court of Appeals,
Div. V.

Announced June 4, 2015

The Poe Law Office LLC, Alan Poe, Rachel Poe, Centennial, Colorado, for Petitioner–Appellant.

Dufford, Waldeck, Milburn & Krohn, L.L.P., Nathan A. Keever, Matthew A. Montgomery, Grand Junction, Colorado, for Respondent–Appellee.

Cynthia H. Coffman, Attorney General, Robert H. Dodd, Jr., Senior Assistant Attorney General, Denver, Colorado, for Intervenor.

Cynthia H. Coffman, Attorney General, John August Lizza, First Assistant Attorney General, Denver, Colorado, for Appellee.

Opinion by JUDGE ROMÁN

¶ 1 Kinder Morgan $CO_2$ Co., L.P., appeals the order issued by the Board of Assessment Appeals (BAA) upholding the Montezuma County assessor's collection of additional oil and gas leasehold taxes for the 2007 tax year. In an issue of first impression, we are asked to decide whether, after the passage of H.B. 90–1018, 57th Gen. Assemb., 2d Sess. (1990) (codified at section 39–10–107(1)(b), C.R.S. 2014), a county may retroactively assess property taxes on the value of oil and gas leaseholds omitted due to underreporting of the selling price or quantity of oil and gas sold therefrom. We conclude that H.B. 90–1018 amended section 39–10–107(1) so that the statute now permits retroactive assessment of property taxes on the value of oil and gas leaseholds omitted due to underreporting of the selling price of oil and gas or the quantity sold therefrom.[1] We further conclude that the BAA was presented with sufficient evidence that Kinder Morgan and the Cortez Pipeline Company are related parties and therefore the BAA correctly upheld the related-parties method of calculating the transportation deduction. Accordingly, we affirm.

## I. Background

¶ 2 The McElmo Dome in Montezuma and Dolores Counties is a large deposit of pure carbon dioxide owned by many mineral interest owners. Kinder Morgan, the largest interest owner, was selected as the operator. Kinder Morgan extracts and processes the carbon dioxide, and then transports it through the Cortez Pipeline to the Permian Basin in West Texas, where it is used by Kinder Morgan in enhanced oil recovery.

¶ 3 Oil and gas leasehold land is valued based on the oil and gas produced throughout the year. For property tax purposes, the value is determined by the owner or operator under the "netback" method of valuation, which permits the operator to deduct the cost of, among other things, transporting unprocessed carbon dioxide downstream to the selling point to determine the net value of the leasehold. If the taxpayer pays a third party to transport the carbon dioxide, the taxpayer is allowed to deduct the amount paid (the tariff rate) for transportation under the "unrelated-third-party" method of calculating the transportation deduction. If the taxpayer transports the carbon dioxide itself, or uses a related company to do so, the taxpayer must use the "related-party" method of calculating the transportation deduction, under which it is only allowed to deduct the direct cost of transportation along with other allowances that account for capital investments and depreciation.

¶ 4 In April 2008, Kinder Morgan submitted six operator statements, one for each tax district, detailing its production in Montezuma County for 2007. The operator statements for 2007 showed a decrease in valuation of carbon dioxide from the previous tax year.

¶ 5 A Montezuma County assessor audited the statements and determined that Kinder

---

1. House Bill 90–1018 amended section 39–10–107(1) and added the provision at issue in this case. See Ch. 371, sec. 4, § 39–10–107(1), 1979 Colo. Sess. Laws 1421; Ch. 277, sec. 40, § 39–10–107(1), 1990 Colo. Sess. Laws 1704–05. Subsequently, in 2008, H.B. 08–1059, 66th Gen. Assemb., 2d Sess. (2008), added language at section 3910–107(1)(a), and the provision at issue here was recodified at section 39–10–107(1)(b). See § 39–10–107(1)(b), C.R.S.2014. Thus, because the language has remained substantially the same since 1990, we make reference to H.B. 90–1018 and section 39–10107(1)(b) where appropriate.

Morgan had underreported the selling price of oil and gas produced because it erroneously applied the unrelated-third-party method of calculating the transportation deduction rather than the related-parties method.

¶ 6 The Assessor found that as a result of applying the incorrect transportation deduction, Kinder Morgan underpaid its taxes for tax year 2007. Specifically, the audit resulted in an increased assessed valuation of $56,745,120, which increased Kinder Morgan's property taxes by $2,028,865.80. The Assessor's increase in taxes was based on a difference in the determination of the allowable transportation deduction.

¶ 7 Kinder Morgan paid the tax bill and then, in 2011, filed a petition with the Board of County Commissioners for Montezuma County (BOCC) for abatement or refund. The BOCC denied Kinder Morgan's petition.

¶ 8 Kinder Morgan then appealed to the BAA. The BAA upheld the BOCC's denial of the petition for abatement or refund, reasoning that the Assessor had the statutory authority to retroactively assess taxes under the auditing guidelines established pursuant to section 39–2–109(1)(k), C.R.S.2014, which provides that the property tax administrator (PTA) is authorized to "prepare and publish guidelines ... concerning the audit and compliance review of oil and gas leasehold properties for property tax purposes." The BAA ruled that because the property tax administrator exercised its authority to develop guidelines for auditing oil and gas leaseholds for property tax purposes, which include changing the valuation of the oil and gas leasehold, issuing special notices of valuation, and issuing a tax bill, the Assessor had the statutory authority to retroactively assess taxes on omitted value.

¶ 9 On appeal, we consider whether (1) the BAA correctly determined that the Assessor had the authority to retroactively assess property taxes and (2) the related-parties transportation deduction was the correct method employed. Because Kinder Morgan challenges the statutory authority of Montezuma County to retroactively assess property taxes in the first place, we begin our analysis there.

## II. Retroactive Assessment of Taxes

¶ 10 Kinder Morgan contends the BAA erred in concluding that the Assessor's retroactive increase in value was authorized under the property tax code. We disagree.

### A. Standard of Review

¶ 11 When reviewing an agency action, we determine all questions of law, interpret constitutional and statutory provisions, and apply the legal interpretation to the facts. *Petron Dev. Co. v. Washington Cnty. Bd. of Equalization*, 91 P.3d 408, 410 (Colo.App. 2003) (*Petron I*), aff'd, 109 P.3d 146 (Colo. 2005) (*Petron II*).

¶ 12 We may set aside a BAA decision if it "reflects a failure to abide by the statutory scheme for calculating property tax assessments." *Id*. To determine whether the BAA decision abides by the statutory scheme, we must interpret the applicable statutory provisions.

¶ 13 Where the BAA reached the correct result, we may affirm its determination on different grounds. *See Newflower Mkt., Inc. v. Cook*, 229 P.3d 1058, 1062 (Colo.App.2010); *Negron v. Golder*, 111 P.3d 538, 542 (Colo. App.2004).

¶ 14 When a taxation implementation statute is clear and unambiguous, we apply it as written, giving substantial deference to valuation and assessment methods and procedures established by the General Assembly. *Petron II*, 109 P.3d at 150.

¶ 15 The PTA, who prepares and publishes the Assessor's Reference Library Manual (ARL), has a significant role in defining and implementing valuation and assessment procedures. *Id*. at 150–51. Therefore, we also defer to the PTA's interpretations if they accord with the statute. *Id*. at 150.

### B. Valuation and Retroactive Assessments

¶ 16 "The Colorado Constitution delegates the task of prescribing procedures for valuing oil to the General Assembly." *Id*. at 147–48; *see* Colo. Const. art. X, § 3(1)(b). Article 7 of Title 39 governs the valuation of oil and gas leaseholds and lands for property taxation. *Yuma Cnty. Bd. of Equalization v.*

*Cabot Petroleum Corp.,* 856 P.2d 844, 848 (Colo.1993) *(Cabot II ).* Its purpose is to ensure uniform taxation premised on uniform assessment of property values. *Id.*

¶ 17 Under Article 5 of Title 39, which governs the valuation and taxation of all real and personal property, retroactive assessment of additional property taxes is permitted "whenever it is discovered that any taxable property has been omitted from the assessment roll." § 39–5–125(1), C.R.S.2014.

¶ 18 Oil and gas leaseholds are valued based on the "selling price of the oil or gas sold from each wellhead during the preceding calendar year." § 39–7–102(1)(a), C.R.S. 2014. Every oil or gas leasehold operator or owner is required to file an annual statement and provide information including the selling price at the wellhead of all oil or gas sold. § 39–7–101(1)(d), C.R.S.2014. The assessor's valuation is determined by the information provided in the annual statement. § 39–7–102(1).

¶ 19 "The assessor's duty is to verify that the information provided in the statement is valid," *Petron II,* 109 P.3d at 151. The statute allows retroactive assessments of additional property taxes when the annual statements are willfully false and misleading. § 39–7105, C.R.S. 2014; *Cabot II,* 856 P.2d at 848–49; *In Stitches, Inc. v. Denver Cnty. Bd. of Cnty. Comm'rs,* 62 P.3d 1080, 1081 (Colo. App.2002). Indeed, the importance of accuracy in the content of the annual statements is emphasized by punishing as "second degree perjury any false statement willfully and knowingly made in a mandatory annual statement." *Cabot II,* 856 P.2d at 848; *see* §§ 39–7–101(1), –105.

¶ 20 But the question before us today is different: Can retroactive assessment of oil and gas leaseholds occur where no property has been omitted from the tax roll, and there is no evidence that the annual statements are willfully false and misleading? Based on section 39–10–107(1)(b), we hold that retroactive assessments of oil and gas leaseholds can

occur where value has been underreported, even without evidence of omitted property or willfully false and misleading annual statements.[2]

### C. Application

#### 1. Omitted Property Versus Omitted Value

¶ 21 Kinder Morgan contends that because the property tax code does not provide an avenue for retroactive assessments of additional property taxes the BAA decision was contrary to statute. Specifically, Kinder Morgan argues that only certain sections of the property tax code explicitly authorize retroactive property tax assessments and none of them is applicable here. It contends that sections 39–5–125 and 39–10–101(2)(a)(I), C.R.S.2014 (the omitted property statutes), only authorize assessors to issue retroactive property tax assessments against taxable *property* omitted from tax rolls, not omitted *value.* Because all of the oil and gas leaseholds comprising the unit were included in the 2008 tax roll[3] and were taxed, the audit revealed only omitted value, but no omitted property. Therefore, according to Kinder Morgan, because no *property* was omitted from its tax roll and its annual statement was not willfully false or misleading, the Assessor's retroactive increase was not authorized by statute. In support of its position, Kinder Morgan relies on *Cabot Petroleum Corp. v. Yuma County Board of Equalization,* 847 P.2d 152 (Colo.App.1992) *(Cabot I ),* rev'd on other grounds by *Cabot II,* 856 P.2d 844. We turn next to that decision.

#### 2. The *Cabot* Decisions

¶ 22 Kinder Morgan is correct that *Cabot I* addressed the issue of whether value omitted due to underreporting can be retroactively assessed and that the division held that the then-existing property tax code authorized retroactive assessments only on omitted property, not on omitted value. *Cabot I,* 847 P.2d at 155.

**2.** The BAA found no evidence that Kinder Morgan's annual statement was willfully false or misleading, and Montezuma County does not argue otherwise.

**3.** Because taxes are assessed after the end of the year, "production year 2007" is synonymous with "tax year 2008."

¶ 23 Montezuma County counters that *Cabot I* no longer controls because it did not account for the change to the property tax code effected by H.B. 90–1018.[4] Specifically, Montezuma County notes that shortly before *Cabot I* was decided, the General Assembly enacted H.B. 90–1018, which amended the property tax code by adding the language in section 39–10–107(1).[5] This new language defines "omitted" oil and gas leaseholds and lands as "the underreporting of the selling price or quantity of oil and gas sold therefrom." Thus, according to Montezuma County, neither *Cabot I* nor any other published case has addressed the impact of H.B. 901018 on the omitted property tax statutes or interpreted the language in section 39–10–107(1)(b). We agree with Montezuma County that in this context *Cabot I* is no longer good law.

¶ 24 In *Cabot I,* the taxpayer gas company filed its required annual statements for the tax years 1986, 1987, and 1988 and paid the property taxes that were then assessed based on that value. Although the taxpayer reported the selling price it actually received at the time, it had previously filed a lawsuit against the purchaser of the gas, contending that the taxpayer was entitled to a substantially higher price under its gas sales contract. The litigation was settled in the taxpayer's favor, and the taxpayer received an additional $4,700,000, which was attributable to the underpayment for the gas. The assessor subsequently sent the taxpayer notices retroactively assessing property taxes on the omitted value not previously reported in the taxpayer's annual statement.

¶ 25 The BAA upheld the assessor's authority to retroactively assess property taxes on an oil and gas leasehold based on the omitted property statute, section 39–5–125. *Cabot I,* 847 P.2d at 154. However, the *Cabot I* division reversed the BAA's decision, concluding that the taxpayer's undervaluation of the leasehold interest did not consti-tute omitted property. *Id.* The division examined other provisions of the statute and found no basis for retroactive assessment of property taxes, reasoning that sections "39–5–125 and 39–10–101(2)(a) authorize retroactive assessments of additional property taxes only against 'omitted *property*' and not against 'omitted *value.*'" *Id.* at 155. The division further concluded that nothing in the record suggested that the taxpayer filed willfully false and misleading annual statements. *Id.* at 156.

¶ 26 The supreme court reversed the holding in *Cabot I* based on the division's conclusion that the taxpayer had not filed willfully false and misleading annual statements. *Cabot II,* 856 P.2d at 849. Because the court concluded that the taxpayer in fact had filed willfully false and misleading annual statements and that such filing permitted retroactive tax assessment, it did not address the omitted property statutes or whether other portions of the property tax code authorized retroactive assessments based on value omitted due to underreporting. *Id.* at 850.

¶ 27 Neither *Cabot* decision, therefore, addressed the impact of the language H.B. 90–1018 added to section 39–10–107(1) or whether that revision to the property tax code authorizes retroactive assessments where owners or operators omit value from their annual statements due to underreporting. Likewise, the parties have not brought to our attention, nor have we found, another Colorado case addressing the impact of H.B. 90–1018 on section 3910–107.

¶ 28 Kinder Morgan nonetheless argues that *Cabot I* should still control because it has been cited and relied on in a number of cases decided since H.B. 90–1018 added the new language in section 3910–107(1) to the property tax code. However, none of the cases Kinder Morgan cites involved oil and gas leaseholds. *See Marsico Capital Mgmt., LLC v. Denver Bd. of Cnty. Comm'rs,* 2013

4. Although Montezuma County did not cite *Cabot I* in its Answer Brief or argue that *Cabot I* is no longer good law at oral argument, it did note, buried in pages twenty-two to twenty-four of its thirty-five page Answer Brief, that the property tax code change effected by H.B. 90–1018 amended the statute.

5. Although *Cabot I* was decided in 1992, the relevant tax years it addressed were 1986, 1987, and 1988. Moreover, all of the relevant citations in *Cabot I* are to the 1982 versions of the property tax statutes—before the provision in H.B. 90–1018 was added to section 39–10–107(1).

COA 90, 342 P.3d 462 (tenant improvements to personal property in commercial office space previously omitted from assessment roll were distinct additions being taxed for first time and therefore constituted "omitted property" under section 39–5–125 and were subject to retroactive property tax assessment); *Bachelor Gulch Operating Co., LLC v. Bd. of Cnty. Comm'rs*, 2013 COA 46, 316 P.3d 43 (where hotel was subdivided into residential condominiums between assessment years, tax code did not authorize retroactive assessments because condos either did not exist prior to subdivision or were valued as part of parent parcel; either way, condos were not "omitted" from assessment rolls and thus section 39–5–125 was inapplicable); *Jet Black LLC v. Routt Cnty. Bd. of Cnty. Comm'rs*, 165 P.3d 744 (Colo.App.2006) (retroactive assessment of common areas of residential property that had not previously been captured on tax rolls but that contributed to value of ownership parcels which had been previously assessed was permissible under section 39–5–125 because common areas were separate components for property tax purposes); *In Stitches*, 62 P.3d 1080 (sections 39–5–125 and 39–10101 do not authorize retroactive assessments where assessor initially undervalued taxpayer's personal property).

¶ 29 Accordingly, because *Cabot I* does not resolve the issue before us, we now examine H.B. 90–1018 and its effect on section 39–10–107.

### 3. The Law Prior to H.B. 90–1018

¶ 30 Prior to the passage of H.B. 90–1018, section 39–5–125(1), the omitted property statute relied on in *Cabot I*, stated: "Whenever it is discovered that any taxable property has been omitted from the assessment roll of any year or series of years, the assessor ... shall list the same on the assessment roll of the year in which the discovery was made." [6]

¶ 31 Section 39–10–107(1) previously stated that all taxes collected are to be apportioned, credited, and distributed "on the tenth day of each month for all taxes collected during the

immediately preceding month...." Ch. 279, sec. 3, § 39–10–107(1), 1984 Colo. Sess. Laws 1003.

### 4. The Law After H.B. 90–1018

¶ 32 House Bill 90–1018 became law on June 9, 1990. It added the following language to section 39–10–107(1):

except that *any prior years' taxes collected* during any given year on oil and gas leaseholds and lands *which had previously been omitted from the assessment roll due to underreporting of the selling price or the quantity of oil and gas sold therefrom* shall be placed in escrow by the treasurer to be apportioned, credited, and distributed during January of the subsequent year.

Ch. 277, sec. 40, § 39–10–107(1), 1990 Colo. Sess. Laws 1704–05 (emphasis added).

¶ 33 Thus, the newly amended section 39–10–107(1) contemplated that taxes would be collected on the value of oil and gas leaseholds that had previously been omitted due to underreporting and that those taxes were to be placed in escrow for distribution the subsequent January rather than being listed on the assessment roll for the year in which the discovery was made. In our view, this clause is significant because if retroactive tax assessments on oil and gas leaseholds were not permitted, the amendment would have been superfluous.

¶ 34 Further, to the extent the statute is unclear, the legislative history of H.B. 90–1018 also supports this interpretation. Speaking before the House of Representatives, the bill's sponsor stated that the amendment provides that "revenues received as taxes paid on gas and oil leaseholds which have previously been omitted from the assessment roles due to underreporting would not be treated as revenues received under taxes paid on omitted taxable property." *Hearing on Schauer Floor Amendment to H.B. 1018 before the H.*, 57th Gen. Assemb., 2d Sess. (Feb. 23, 1990) (statement of Rep. Paul Schauer).[7] By requiring that taxes col-

---

6. The language of section 39–5–125 has remained substantially the same. *Compare* Ch. 94, sec. 1, § 137–5–125, 1964 Colo. Sess. Laws 705, *with* § 39–5–125(1), C.R.S.2014.

7. Montezuma County cites this testimony as having taken place on February 3, 1990. However,

lected on value omitted due to underreporting be placed in escrow for distribution the following January, H.B. 90–1018 intended to treat value omitted due to underreporting as retroactively taxable omitted property but to exempt the taxes collected on such value from the requirement of being listed on the assessment roll for the year in which the omitted value was discovered.

¶ 35 Kinder Morgan argues that H.B. 90–1018 effected only minor, nonsubstantive changes to sections 39–5–125 and 39–10–101(2)(a)(I). However, Kinder Morgan is looking at the wrong statutory section. It is the change H.B. 90–1018 made to section 39–10–107(1) that provides authorization for retroactive property tax assessments on omitted value, not changes to sections 39–5–125 or 39–10–101(2)(a)(I).

¶ 36 For these reasons, we agree with Montezuma County that H.B. 90–1018 amended the property tax code to authorize retroactive property tax assessments on the value of oil and gas leaseholds and lands omitted due to underreporting of the selling price or quantity of oil and gas sold therefrom. Because of these changes, section 39–10–107(1)(b), together with the omitted property statute, authorizes retroactive property tax assessments on the value of oil and gas leaseholds omitted due to underreporting of the selling price or oil and gas sold therefrom.[8]

¶ 37 Accordingly, we hold that, contrary to the statutory scheme addressed in *Cabot I*, the statutory scheme now authorizes retroactive property tax assessments on oil and gas leaseholds where value is omitted from an annual statement due to the underreporting of the selling price or quantity of oil and gas sold therefrom. We therefore affirm the ruling of the BAA.

### III.  Transportation Deduction

¶ 38 Kinder Morgan also contends the BAA erred in determining that Kinder Morgan and the Cortez Pipeline Company were "related parties" for purposes of calculating the transportation deduction. Moreover, according to Kinder Morgan, even if the two companies are related parties, the BAA erred in concluding that a transportation deduction was not allowed under the unrelated-party-charges-as-comparables method. Again, we disagree with these contentions.

¶ 39 "It is the function of the BAA, not the reviewing court, to weigh the evidence and resolve any conflicts therein. A decision of the BAA, however, may be set aside if it is unsupported by competent evidence or reflects a failure to abide by the statutory scheme for calculating property tax assessments." *Bachelor Gulch*, ¶ 13 (citation omitted).

¶ 40 The BAA upheld the Assessor's determination that the transportation deduction was to be calculated under the related-parties method. The BAA ruled that Kinder Morgan "presented insufficient probative evidence and testimony to prove that the tax year 2008 valuation of the subject property was incorrect." The BAA also determined that Kinder Morgan and the Cortez Pipeline Company were related parties, and therefore the related-party method of calculating the transportation deduction was correct. This determination is supported in the record.

¶ 41 The certified public accountant who performed the audit of Kinder Morgan, and who was certified as an expert in Colorado oil and gas ad valorem tax auditing, testified before the BAA. She examined all of Kinder Morgan's contracts to see to whom it was selling gas and what the terms of those contracts were. She also reviewed Kinder

---

our review of the legislative history shows that this testimony actually occurred on February 23, 1990.

**8.** We note that the ARL references section 39–10–107, C.R.S.2014, which allows apportionment of additional taxes collected for "oil and gas leaseholds and lands that had previously been omitted from the assessment roll due to underreporting of the selling price or the quanti-

ty of oil and gas sold therefrom." § 39–10–107(1)(b). The ARL's use of the term "underreporting" is consistent with our conclusion that the property tax code allows retroactive collection of taxes based on value omitted due to underreporting on an owner's or operator's annual statement. *See* Div. of Prop. Taxation, Dep't of Local Affairs, *Real Property Valuation Manual* § 6.55 (rev. Oct. 2014); *see also Petron II*, 109 P.3d 146, 150 (Colo.2005).

Morgan's operating expenses, invoices, and financial statements. In doing so, she determined that Kinder Morgan was a partner in some of the interstate pipeline companies in which it was transporting the carbon dioxide. She further testified that her determination that Kinder Morgan and the Cortez Pipeline Company were related parties was based on (1) a review of audited financial statements of the Cortez Pipeline Company, which disclosed Kinder Morgan as a general partner in the Cortez Pipeline Company; (2) Kinder Morgan's disclosure in its own financial statement that it was a partner in the Cortez Pipeline Company; and (3) the fact that 98% of Cortez Pipeline's income was earned from the owners of the Cortez Pipeline, one of which was Kinder Morgan.

¶ 42 Additionally, the auditor testified that the unrelated-party-charges-as-comparables method was not applicable because (1) Kinder Morgan, as operator of the oil and gas leaseholds, is the reporter of record and is a partner with the Cortez Pipeline Company; and (2) there was not a sufficient number of third-party transactions to account for a comparable price.

¶ 43 We conclude the BAA's decision was supported by competent evidence that Kinder Morgan and the Cortez Pipeline Company were related parties for the purpose of calculating the allowable transportation deduction. Accordingly, we affirm the BAA's ruling regarding the transportation deduction.

### IV. Conclusion

¶ 44 The order is affirmed.

Ashby and Vogt *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and